29 N.J. Super. 221 (1953)
102 A.2d 112
MAIN INVESTMENT CO. OF PASSAIC, A CORPORATION, PLAINTIFF,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, A CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 31, 1953.
*222 Mr. Harold D. Feuerstein (Mr. Frank W. Shershin, of counsel), attorneys for plaintiff.
Mr. William P. Braun and Mr. Marshall Crowley, attorneys for defendant.
GRIMSHAW, J.S.C.
Plaintiff, a finance company, is the holder of a policy issued by the defendant which insures the plaintiff against liability for damages resulting from accidents in which automobiles owned by the plaintiff and covered by the policy are involved. Plaintiff seeks a judgment declaring that an automobile which was in an accident on May 28, 1952, was covered by the policy.
The policy in question insured the plaintiff for one year beginning January 31, 1952. It was a renewal of other similar policies, the first of which was for the period commencing January 31, 1950 and ending January 31, 1951. Prior to January 31, 1950 the plaintiff had carried a similar policy with another insurer.
The policy contains a schedule listing four cars covered by the policy. The car in question was not one of those listed nor was any request made to have it substituted for one of those cars listed in the schedule.
The policy contains, among other things, the following provisions:
"IV (4) Newly Acquired Automobile  an automobile, ownership of which is acquired by the Named Insured who is the owner of the described automobile, if the Named Insured notifies the Company within thirty days following the date of its delivery to him, and if *223 either it replaces an automobile described in this policy or the Company insures all automobiles owned by the Named Insured at such delivery date; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the Named Insured has other valid and collectible insurance. The Named Insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."
Also:
"V Use of Other Automobiles  If the Named Insured is an individual who owns the automobile classified as `pleasure and business' or husband and wife either or both of whom own said automobile, such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile, subject to the following provisions:
(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `Insured' includes (1) such Named Insured, (2) the spouse of such individual if a resident of the same household and (3) any other person or organization legally responsible for the use by such Named Insured or spouse of an automobile not owned or hired by such other person or organization."
Plaintiff bases its plea for judgment on the quoted provisions of the policy.
The sequence of events leading up to this controversy is, briefly, as follows:
On March 27, 1952 one Richard Crozier purchased a 1948 Hudson sedan from a used car dealer under a conditional sales contract. The purchase price was $800, of which $300 was paid when the contract was signed. The contract provided that the balance of the purchase price would be paid in 18 monthly installments of $41.28 each. The contract was purchased by the plaintiff which paid to the conditional vendee $500, the balance of the purchase price, and insurance premiums in the amount of $110.76.
Crozier made the first of the installment payments to the plaintiff on April 27, 1952. Then on the night of May 19, or the early morning of May 20, the car was stolen. The Stuyvesant Insurance Company, which had covered the car for fire, theft and collision, the police and the plaintiff were notified of the theft.
*224 On May 21, 1952 the car was recovered in Rochester, New York. Crozier, a truck driver, was notified of the recovery of the car as he was about to set out on a trip. He told his wife to notify the insurance company. Mrs. Crozier called the Stuyvesant Company, which referred her to the plaintiff. The Main Investment Company suggested that the Croziers go for the car. This they could not or would not do. Finally the plaintiff sent one of its employees to drive the car back to New Jersey. On the way back on May 28, 1952 the car was involved in an accident and was completely wrecked.
The plaintiff claims that prior to the accident it had agreed to purchase the car from the Croziers. As a result, it asserts that at the time of the accident plaintiff was, in equity, the beneficial owner of the car. The proofs do not support this contention.
Crozier first learned of the accident on June 6. Before that time he had been on the road almost without interruption. Testifying as a witness for the plaintiff he said that he authorized his wife to discuss with the plaintiff the possible turnover to it of the car, but did not give her authority to consummate any agreement. He was willing to sell provided he was paid the amount which he had invested in the car.
Mrs. Crozier's discussions with Pfeiffer, the representative of the plaintiff, were conducted over the telephone. They were largely concerned with the recovery of the car. She testified that she told Pfeiffer that Crozier would be willing to sell the car if he received in return the amount of money which he had invested. Pfeiffer testified that he was prepared to pay Crozier the amount of his equity "or a little less." Neither Crozier nor his wife had discussed figures with the plaintiff prior to June 6, 1952.
On that date a representative of the defendant called on the Croziers. He told them of the accident, which was their first information on the subject. Both Croziers signed statements in which no mention was made of any agreement for the sale of the car. Both of the Croziers stated that they *225 had not heard from the plaintiff after May 26, when the return of the car was under discussion.
Later, on the 6th of June, the Croziers went to the office of the plaintiff, where they were received by Mr. Schiffman, president of the plaintiff company, and Mr. Hammer, its attorney. After some discussion, Crozier was handed a check for $785, which he endorsed and returned to Schiffman. Crozier then received $252.68 in cash and assigned his interest in the car to the plaintiff.
During the conference the Croziers executed an affidavit which purported to be a narrative of the events which followed the theft of the car. The affidavit was requested "because there might be legal proceedings." The statements in the affidavit were at variance with the prior statements of the Croziers and also conflicted with the testimony given by them at the hearing. The affidavit was not impressive.
I am satisfied that there was no valid agreement for the purchase of the Crozier car by the plaintiff.
Plaintiff contends that even so, the car in question was covered by the policy. The argument is that possession was obtained on May 28, title passed on June 6, and the defendant was notified within 30 days thereafter. Therefore, the provisions of article IV (4) of the policy apply.
Passing the question as to whether the possession obtained on May 28 was that of the plaintiff for itself or as agent for the Croziers, the argument ignores the fact that article IV (4) applies only if the newly acquired car is a replacement for one of those cars listed in the schedule or if the company insures all of the cars owned by the insured.
It is beyond dispute that the Crozier car was not a replacement for one of the cars listed in the schedule. Also it was not established that the defendant insured all of the cars owned by the plaintiff. On the contrary, such evidence as there was, indicated that the plaintiff owned other cars not insured by the defendant.
Plaintiff also maintains that the car is covered by the provisions of article V. This argument is based upon the assumption that the word "individual" as used in the article *226 includes a corporation. A mere reading of the article, I think, is sufficient to demolish the contention.
Judgment for the defendant.